UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 22, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Ashley H. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
Civil No. 22-3035-BAH

Dear Counsel:

On November 23, 2022, Plaintiff Ashley H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8), the parties' dispositive filings (ECFs 11 and 12), and Plaintiff's reply (ECF 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on January 8, 2020, alleging a disability onset of June 11, 2018. Tr. 175–76. Plaintiff's claim was denied initially and on reconsideration. Tr. 100–03, 107–11. On January 11, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 37–75. Following the hearing, on March 15, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 7–31. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ

---

[1] 42 U.S.C. §§ 301 et seq.

*Ashley H. v. Kijakazi*
Civil No. 22-3035-BAH
September 22, 2023
Page 2

evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 11, 2018, the alleged onset date." Tr. 12. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "inflammatory polyarthropathy, positive ANA, ankylosing spondylosis, degenerative disc disease, plantar fasciitis, lymphocytic colitis, Chron's disease, migraines, anemia, major depressive disorder, attention deficit hyperactivity disorder (ADHD), and anxiety disorder." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "endometriosis, ovarian cyst, vitamin D deficiency, and seasonal allergic rhinitis." Tr. 13. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ladders, ramps and stairs, but never climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, crouch and crawl; she can tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dust, gases, poor ventilation and vibrations; she can have no exposure to hazards, such as moving machinery or unprotected heights; she can tolerate exposure to lights no brighter than a typical office setting level; she can tolerate exposure to noise no louder than a typical office setting level or moderate noise; she can frequently finger, handle and reach; and she can remember, understand and carry out simple instructions, but could not work at a production pace such as assembly line work.

Tr. 16–17. The ALJ found that Plaintiff could not perform any past relevant work but could perform other jobs existing in significant numbers in the national economy. Tr. 23. Thus, the ALJ concluded that Plaintiff was not disabled. Tr. 24.

### III.     LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the

evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.    ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the ALJ erred at step three by providing an inadequate analysis of whether her severe impairments met a listed disorder (specifically, inflammatory arthritis) set forth in the Listing of Impairments (the "Listings") at 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 14.09B. ECF 11, at 9–26. Second, Plaintiff avers that the ALJ erred by failing to "consider[] whether Plaintiff's medical evidence *equaled* Listing 14.09(B) based on the combination of all of Plaintiff's co-impairments including obesity, her degenerative disc disease, her plantar fasciitis, and her Crohn's disease." *Id.* at 26–27 (emphasis in original). Defendant counters that substantial evidence supported the ALJ's finding that Plaintiff's impairments did not meet or medically equal Listing 14.09B. ECF 12, at 6–14.

The Court begins by considering Plaintiff's argument that the ALJ erred by failing to conclude that her impairments met Listing 14.09B. ECF 11, at 9–26. The Listings describe, "for each of the major body systems[,] [the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity. . . ." *Figgs v. Saul*, No. 1:20-CV-00334-JMC, 2021 WL 3930708, at *5 (D. Md. Sept. 2, 2021) (quoting 20 C.F.R. § 404.1525(a)). At step three, an ALJ determines whether a claimant's impairments are severe enough to meet or medically equal a particular Listing. *See* 20 C.F.R. § 404.1525. "In evaluating a claimant's impairment" under the Listings, "an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

Relevant to this case, Listing 14.09 pertains to inflammatory arthritis and can be met or equaled by satisfying all of the criteria outlined in any of four subparagraphs. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09. Listing 14.09B, the second subparagraph, is satisfied by demonstrating the existence of three criteria: (1) "Inflammation or deformity in one or more major joints[2] of an upper or a lower extremity"; (2) "Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity"; and (3) "At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." *Id.* § 14.09B.

Here, the ALJ determined that Plaintiff suffered from the severe impairments of "inflammatory polyarthropathy, positive ANA, ankylosing spondylosis, degenerative disc disease, plantar fasciitis, lymphocytic colitis, Chron's disease, migraines, anemia, major depressive disorder, attention deficit hyperactivity disorder (ADHD), and anxiety disorder." Tr. 12. Then, at step three, the ALJ determined that none of Plaintiff's impairments, nor any combination thereof,

---

[2] Major joints of an upper extremity include "the shoulder, elbow, and wrist-hand." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00I(2). Major joints of a lower extremity include "the hip, knee, and ankle-foot." *Id.* § 1.00I(3).

*Ashley H. v. Kijakazi*
Civil No. 22-3035-BAH
September 22, 2023
Page 4

met or medically equaled the severity of Listing 14.09B. Tr. 13–14. Specifically, the ALJ determined that the criteria relevant to Listing 14.09B were not satisfied for the following reasons:

> [Plaintiff] had positive ANA with diagnoses of inflammatory polyarthropathy then ankylosing spondylitis, lymphocytic colitis then Chron's, and plantar fasciitis. She denied fever in review of systems. She reported malaise/fatigue and weight loss in September 2019 but this appears associated with acute non-recurrent sinusitis. She reported weight loss in October 2019 but notations of fatigue and malaise are vague with no explanation to support severe fatigue with frequent sense of exhaustion resulting in reduced physical activity or mental function or malaise with frequent feelings of illness, bodily discomfort, or lack of well-being resulting in significantly reduced physical or mental function as defined in 14.00C2. After starting on Humira in June 2020 for ankylosing spondylitis and Chron's, her bowel issues became controlled and her weight increased to baseline. Subsequent treatment records do not indicate any detailed explanations regarding fatigue or malaise to suggest that her symptoms meet the listing definition noted above. In November 2020, she reported fatigue with low energy but energy a little better, which does not suggest fatigue was severe. She reported extreme fatigue in January 2021 with no detail on impact on functioning. It is not until July 2021 that she reported severe fatigue that was overwhelming such that she was having difficulty caring for her children, but references to malaise were vague with no explanation. There were no indications of fatigue and malaise in October or November 2021.

Tr. 14–15 (internal citations omitted).

The ALJ's step-three analysis constitutes error for several reasons. First, the ALJ did not analyze whether, pursuant to Listing 14.09B, Plaintiff experienced "[i]nflammation or deformity in one or more major joints of an upper or lower extremity[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09B. Although the ALJ noted that Plaintiff had several impairments, including inflammatory polyarthropathy, *see* Tr. 14, the ALJ did not explain how any of these impairments do or do not involve inflammation or deformity in a major joint. The ALJ also failed to discuss whether, pursuant to the relevant Listing, any joint inflammation or deformity in the record "[i]nvolve[d] . . . two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09B(1).

A review of the record suggests, however, that Plaintiff's impairments may satisfy these criteria. For example, during an April 2020 appointment, a physician assistant noted that Plaintiff "has joint pain mainly involving [her] knees," with "[e]pisodic swelling and redness in [her] knees." Tr. 558 (describing Plaintiff's joint pain and swelling as a "[m]usculoskeletal" issue). Additionally, a narrative accompanying an x-ray taken in May 2020 notes that Plaintiff has had "bilateral knee pain [for] several years," that the pain has been "getting worse the past 2-3 months," and that "[t]here is soft tissue swelling." Tr. 1305. These records permit a finding that Plaintiff has experienced inflammation in the major joint of a lower extremity (namely, her knee). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09B. Further, because the records suggest that Plaintiff's knee pain was accompanied by redness and worsened over time, the records also permit an ALJ to

conclude that Plaintiff's knee inflammation: (1) involved her musculoskeletal system to at least a moderate degree of severity, and (2) involved an organ (specifically, Plaintiff's skin). *See id*. § 14.09B(1).

It is not this Court's "province to . . . substitute [its] judgment" for that of the ALJ. *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). Accordingly, this Court may not determine "in the first instance" whether a plaintiff's impairment meets a Listing at step three. *Id.* But where "there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments," an ALJ's duty to compare the evidence to the Listing's criteria is "triggered." *See Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999). Here, the ALJ engaged in an analysis of Listing 14.09B's applicability without discussing the first two criteria relevant to that Listing, and the record contains evidence which appears to satisfy those criteria. Accordingly, remand is warranted. *See Nina S. v. Kijakazi*, No. BAH-22-3293, 2023 WL 5804416, at *5 (D. Md. Sept. 6, 2023) (remanding where the ALJ failed to "explain why the evidence did, or did not, satisfy the relevant Listing criteria.").

Remand is also warranted due to the ALJ's erroneous evaluation of the third and final criterion relevant to Listing 14.09B—the existence of "[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09B(2). In considering whether this criterion was met, the ALJ dismissed Plaintiff's September 2019 reports of malaise, fatigue, and weight loss because the reports "appear[ed] [to be] associated with acute non-recurrent sinusitis." Tr. 14. However, whether these symptoms were associated with sinusitis is irrelevant. Although Listing 14.09B requires that two organs or body systems be "[i]nvolved" with a claimant's joint inflammation, the Listing sets forth no analogous requirement with respect to a claimant's "constitutional symptoms or signs." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09B. Indeed, the Listings make clear that "constitutional symptoms" may involve organs or body systems "other than the joints." *Id.* § 14.00D(6) (explaining that "constitutional symptoms or signs" include "extra-articular features"); *id.* § 14.00C(5) (explaining that the term "extra-articular" refers to organs "other than the joints" and may encompass "organ(s) such as the heart, lungs, kidneys, or skin."). Accordingly, the ALJ's dismissal of Plaintiff's malaise, fatigue, and weight loss symptoms due to their association with sinusitis, rather than joint swelling, was improper. *See Radford*, 734 F.3d at 294 (explaining that the "text [and] structure" of a Listing must inform its plain meaning).

The ALJ also discounted Plaintiff's symptoms of "extreme fatigue" and weight loss by stating that: (1) Plaintiff's weight "increased to baseline" after the use of medication and (2) Plaintiff's report of fatigue contained "no detail on impact on functioning." Tr. 14. But these observations reflect a misunderstanding of the law governing step three of the sequential evaluation process. SSA regulations make clear that "[i]t is not necessary, unless the listing specifically states otherwise, to provide information about the intensity, persistence, or limiting effects of the symptom as long as all other findings required by the specific listing are present." 20 C.F.R. § 404.1529(d)(2). Listing 14.09B contains no criteria related to the persistence or limiting effects of symptoms. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09B. As such, the ALJ's reference to an impact on functioning, as well as their observation that Plaintiff's weight

loss did not persist, were irrelevant to determining whether Plaintiff exhibited any of the symptoms set forth in Listing 14.09B. *See* 20 C.F.R. § 404.1529(d)(2). Because "[a] finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law," the ALJ's contravention of 20 C.F.R. § 404.1529(d)(2) and Listing 14.09B's requirements necessitates remand. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

In sum, the ALJ erred by failing to adequately explain why Plaintiff's impairments did not meet Listing 14.09B and by applying incorrect legal standards in their step-three analysis. The Court expresses no view on whether Plaintiff's impairments satisfy Listing 14.09B, given that only the ALJ may weigh conflicting evidence and make credibility determinations. *See Craig*, 76 F.3d at 589. But, because a more thorough step-three analysis may be dispositive of whether Plaintiff is entitled to benefits in this case, the ALJ must provide a more fulsome discussion on remand of how the evidence does or does not support a finding that Listing 14.09B's criteria are satisfied.[3]

Because the case is being remanded on other grounds, I need not address Plaintiff's argument that the ALJ failed to consider whether Plaintiff's impairments equaled Listing 14.09B. ECF 11, at 26–27. On remand, the ALJ is welcome to consider this argument and make any required adjustments to the opinion.

## V. CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g). The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

[3] In addition to the evidence discussed above, Plaintiff provides a plethora of record citations to support her contention that her severe impairments meet and/or equal Listing 14.09B. *See* ECF 11, at 16–25. The Court does not examine each of Plaintiff's proffered citations here, as it cannot be expected to parse a voluminous record to determine the actual evidence that may support (or undermine) the ALJ's conclusions. *See, e.g.*, *U.S. ex rel. Davis v. Prince*, No. 1:08-cv-1244, 2011 WL 2749188, at *3 (E.D. Va. July 13, 2011) ("It is not the Court's responsibility to undertake the herculean task of reviewing a voluminous record to find evidence to support each party's position."). But, in addition to directing the ALJ to review the evidence cited in the Court's analysis, the Court also encourages the ALJ to review the evidence Plaintiff identifies on appeal in conducting a step-three analysis on remand.